# UNITED STATES DISTRICT COURT

### MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

February 27, 2008

# NOTICE OF CORRECTION

**From:    Clerk's Office**

**Case Style:    Colony Insurance Company v. Floyd's Professional Tree Service et al**

**Case Number:    3:07-cv-01044-TFM**

**This Notice of Correction was filed in the referenced case this date to attach the correct PDF document previously attached and to attach the previously omitted exhibits.**

**The correct PDF documents are attached to this notice for your review.   Reference is made to document # 7   filed on    February 19, 2008.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **COLONY INSURANCE COMPANY,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CASE NO. 3:07-CV-01044- TFM** |
| ) | |
| **FLOYD'S PROFESSIONAL TREE** ) | |
| **SERVICE, DUSTIN A. FLOYD, and JUNE C.** ) | |
| **BRAND,** ) | |
| ) | |
|     **Defendants.** ) | |

<u>**PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

COMES NOW, Colony Insurance Company, and pursuant to Rule 15 of the *Federal Rules of Civil Procedure* and 15.1 of the local rules of this Court, amends its Complaint to add June C. Brand as an additional Defendant in this action.  Plaintiff's Complaint is hereby amended to allege as follows:

1.   Colony Insurance Company ("Colony") is a Virginia corporation with its principal place of business being Richmond, Virginia.

2.   Floyd's Professional Tree Service, Inc. is an Alabama corporation with its principal place of business being in Alabama.

3.   Dustin A. Floyd is an Alabama resident.

4.   June C. Brand is an Alabama resident.

5.   Jurisdiction is based upon complete diversity of citizenship, pursuant to 28 USC §§ 1332(a), 1441(a) and 2201.

1

6.  The amount in controversy exceeds $75,000.

7.  On October 19, 2006,Tyler Adam Scott, an adult resident of Tallapoosa County, Alabama, filed an action in the Circuit Court of Tallapoosa County, Alabama, against, among others, Dustin A. Floyd d/b/a Floyd's Tree Service, Inc. (hereinafter collectively referred to as "Floyd").  A copy of the complaint in this action is attached hereto as Exhibit "A."  This complaint seeks to recover damages from Floyd based on allegations that it, or a person under its employment, negligently or wantonly parked a trailer in the east bound lane of Raintree Drive, Alexander City, Alabama, causing a traffic accident wherein Tyler Adam Scott was injured.

8.  On February 28, 2007, June C. Brand, one of the other defendants in the complaint referenced in paragraph 4 above, filed a cross-claim against Floyd. A copy of this cross-claim complaint is attached hereto as Exhibit "B."  In this cross-claim complaint, June C. Brand alleges that she too was involved in the automobile accident referenced in the original complaint, and makes claims of negligence, wantonness, and indemnity against Floyd.

9.  On July 29, 2007, Tony J. Coker, as parent and next friend of Lauren Coker, a minor, filed an action in the Circuit Court of Tallapoosa County, Alabama, against among others, Floyd.  A copy of the Complaint in this action is attached hereto as Exhibit "C".  This Complaint seeks to recover damages from Floyd based on allegations that it, or a person under its employment, negligently or wantonly parked a trailer in the east-bound lane of Raintree Drive, Alexander City, Alabama, causing a traffic accident wherein Lauren

2

Coker was injured.

10.. Subsequent to the complaints referenced above, Floyd requested that Colony provide a defense to Floyd pursuant to a commercial general liability policy written by Colony with the policy number GL3418219. The policy limits for this policy is $1,000,000 per occurrence. A copy of this insurance policy is attached hereto as Exhibit "D." Colony's policy grants Floyd liability insurance coverage protection under certain circumstances, subject to the coverage provisions contained in the insurance policy, and provided that no exclusion contained in the policy applies.

11. Subsequent to Floyd's request that Colony provide for a defense of the above-referenced lawsuits, Colony informed Floyd that it would not defend the above-referenced lawsuits based on, among other things, the following provisions contained in Colony's commercial general liability coverage for Floyd:

**SECTION 1 - COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**    **Insuring Agreement**

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of the "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "prperty damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

    **2.**    **Exclusions**

    This insurance does not apply to:

**g.**     **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arsing out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

**SECTION V - DEFINITIONS**

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**ABSOLUTE**
**AUTO, AIRCRAFT AND WATERCRAFT**
**EXCLUSION**

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**     **SECTION 1 - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, paragraph **g.** is deleted and replaced with the following:

**g.**     **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use, or entrustment to others of any aircraft, "auto" or watercraft.  Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

**B.   SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance, paragraph b. Excess Insurance**, subparagraph **(1)(d)** is deleted.

4

12. As shown by Exhibits "A", "B" and "C" attached hereto, both the original claims and the cross-claim action currently pending in Tallapoosa County Circuit Court pertain to Floyd's parking of a trailer.

13. As shown by the coverage limitations above in paragraph 7 and the definition of auto also contained in that paragraph, the claims made by plaintiff and cross-claim plaintiff in the above-referenced lawsuits are clearly not covered under Floyd's policy of insurance with Colony.

14. Colony disputes that it is obligated to defend the actions referenced above brought by June C. Brand, Tyler Adam Scott, and Tony J. Coker or that it is obligated to afford coverage to satisfy any judgment which may be rendered in favor of Tyler Adam Scott, June C. Brand or Tony J. Coker.

15. Colony now seeks a declaratory judgment from this Court as to whether it is correct that it is not contractually obligated to defend or indemnify Floyd's in the above-referenced actions. Specifically, Colony contends that insurance coverage does not exist under the insurance policy because the accident referred to in the Tallapoosa County actions clearly arose out of an automobile hazard, which is not covered under Floyd's commercial general liability policy.

16. Colony contends that there is no insurance coverage in the Tallapoosa County Actions for Floyd under insurance policy No. GL3418219, for the reasons stated above, and seeks a declaration accordingly.

5

17.  Colony states that this is a justiciable controversy within the jurisdiction of this Court, such that the declaration of obligations and responsibilities, if any, of insurance coverage is appropriate.

WHEREFORE, Colony prays that this Court will issue a declaration as to whether it owes any defense or indemnity duties in the above-referenced state court actions, and that this Court will make specific rulings and finding as to whether Colony owes any obligations or responsibilities to pay any damages for any part of the judgment which may be rendered in this case.

This the 19th Day of February, 2008.

_S/    Blake L. Oliver_____
Of Counsel for Colony Insurance Company

OF COUNSEL:
Adams, Umbach, Davidson & White
P.O. Box 2069
Opelika, AL 36803
(334) 745- 6466

## CERTIFICATE OF SERVICE

I do hereby certify that the Clerk for the Middle District of Alabama, Eastern Division has served the above Amended Complaint with accompanying summons by Certified Mail on the following:

June C. Brand
1978 Dadeville Road
Alexander City, AL 35010

I do certify that I have this day served a true and correct copy of the above and foregoing First Amended Complaint to the following by mailing a copy of same, United States mail, postage prepaid at the addresses below:

Floyd's Professional Tree Service          Dustin A. Floyd
1776 Elder Road                            1776 Elder Road
Dadeville, AL 36853                        Dadeville, AL 36853

This the 19th day of February, 2008.

_____S/    Blake L. Oliver_____
Of Counsel for Colony Insurance Company

7

04/13/2007 11:52 AM

04/11/2007 10:14   2568257318                DONALD R HARRISON

02/16/2007 11:11 FAX  2563282015         MORRIS HAYNES & HORNSBY



**PLAINTIFF'S
EXHIBIT

A**

## IN THE CIRCUIT COURT OF TALLAPOOSA COUNTY, ALABAMA
## ALEXANDER CITY DIVISION

| | |
|---|---|
| **TYLER ADAM SCOTT,** | * |
| **Plaintiff,** | * |
| | * |
| **v.** | *    CIVIL ACTION NO.: _____ |
| | * |
| **DUSTIN A. FLOYD, an individual;** | * |
| **JUNE C. BRAND, an individual;** | * |
| **Fictitious party defendant no. 1,** | * |
| **whether singular or plural, is that** | * |
| **certain person or persons, entity or** | * |
| **entities, who or which had** | * |
| **responsibility for the vehicle that** | * |
| **was improperly parked in the** | * |
| **roadway which caused the injuries** | * |
| **sustained by the Plaintiff; Fictitious** | * |
| **party defendant no. 2, whether** | * |
| **singular or plural, is that certain** | * |
| **person or persons, entity or entities,** | * |
| **who or which had responsibility** | * |
| **for the trailer that was improperly** | * |
| **parked in the roadway and involved** | * |
| **in the incident made the basis of this** | * |
| **suit; Fictitious party defendant no. 3,** | * |
| **whether singular or plural, is that** | * |
| **certain person or persons, entity or** | * |
| **entities, who or which is the** | * |
| **employer of the operator and/or** | * |
| **owner of the trailer involved in the** | * |
| **incident made the basis of this suit;** | * |
| **Fictitious party defendant no. 4,** | * |
| **whether singular or plural, is that** | * |
| **certain person or persons, entity or** | * |
| **entities who or which is the** | * |
| **successor in interest to the employer** | * |
| **of the operator and/or owner of the** | * |
| **trailer involved in the incident made** | * |
| **the basis of this suit; Fictitious** | * |
| **party defendant no. 5, whether** | * |
| **singular or plural, is that certain** | * |

1

04/13/2007 11:52 AM
04/11/2007 10:14    2568257318                DONALD R HARRISON        PAGE 03
02/16/2007 11:12 FAX 2583292015          MORRIS HAYNES & HORNSBY             ☑ 003/008

person or persons, entity or entities, &ast;
who or which is the predecessor in    &ast;
interest to the operator and/or owner &ast;
of the trailer involved in the incident &ast;
made the basis of this suit; Fictitious &ast;
party defendant no. 6, whether        &ast;
singular or plural, is that certain     &ast;
person or persons, entity or entities, &ast;
who or which is the owner of the     &ast;
vehicle which caused the injuries      &ast;
sustained by the Plaintiff; Fictitious  &ast;
party defendant no. 7, whether        &ast;
singular or plural, is that certain     &ast;
person or persons, entity or entities, &ast;
who or which is the owner of the     &ast;
trailer involved in the incident made  &ast;
the basis of this suit; Fictitious       &ast;
party defendant no. 8, whether        &ast;
singular or plural, is that certain     &ast;
person or persons, entity or entities, &ast;
whose negligence in any way          &ast;
caused the injuries sustained         &ast;
by the Plaintiff. Plaintiff avers that   &ast;
the identities of the fictitious party   &ast;
defendants herein are otherwise      &ast;
unknown to the Plaintiff at this time, &ast;
or if their names are known to the    &ast;
Plaintiff, their identities as proper    &ast;
party defendants are not known to    &ast;
the Plaintiff at this time and their     &ast;
true names will be substituted by     &ast;
amendment when ascertained.        &ast;
                                      &ast;
**DEFENDANTS.**                      &ast;



## <u>COMPLAINT</u>

1.    The Plaintiff, TYLER ADAM SCOTT, is an adult resident citizen of

Tallapoosa County, Alabama.

2.    The Defendant, JUNE C. BRAND, is, upon information and belief, an

2

adult resident citizen of Tallapoosa County, Alabama.

3.    The Defendant, DUSTIN A. FLOYD, is, upon information and belief, an adult resident citizen of Tallapoosa County, Alabama.

4.    Fictitious party defendant no. 1, whether singular or plural, is that certain person or persons, entity or entities, who or which had responsibility for the vehicle that was improperly parked in the roadway which caused the injuries sustained by the Plaintiff;

5.    Fictitious party defendant no. 2, whether singular or plural, is that certain person or persons, entity or entities, who or which had responsibility for the trailer that was improperly parked in the roadway and involved in the incident made the basis of this suit;

6.    Fictitious party defendant no. 3, whether singular or plural, is that certain person or persons, entity or entities, who or which is the employer of the operator and/or owner of the trailer involved in the incident made the basis of this suit;

7.    Fictitious party defendant no. 4, whether singular or plural, is that certain person or persons, entity or entities who or which is the successor in interest to the employer of the operator and/or owner of the trailer involved in the incident made the basis of this suit;

8.    Fictitious party defendant no. 5, whether singular or plural, is that certain person or persons, entity or entities, who or which is the predecessor in interest to the operator and/or owner of the trailer involved in the incident made the basis of this suit;

9.    Fictitious party defendant no. 6, whether singular or plural, is that certain person or persons, entity or entities, who or which is the owner of the vehicle which

3

04/13/2007 11:52 AM
04/11/2007  10:14    2568257318          DONALD R HARRISON        PAGE  05
02/16/2007 11:12 FAX  2563292015      MORRIS HAYNES & HORNSBY      @ 005/008

caused the injuries sustained by the Plaintiff;

    10.   Fictitious party defendant no. 7, whether singular or plural, is that certain person or persons, entity or entities, who or which is the owner of the trailer involved in the incident made the basis of this suit;

    11.   Fictitious party defendant no. 8, whether singular or plural, is that certain person or persons, entity or entities, whose negligence in any way caused the injuries sustained by the Plaintiff;

    12.   Plaintiff avers that the identities of the fictitious party defendants herein are otherwise unknown to the Plaintiff at this time, or if their names are known to the Plaintiff, their identities as proper party defendants are not known to the Plaintiff at this time and their true names will be substituted by amendment when ascertained.

### STATEMENT OF THE FACTS

    13.   On or about December 19, 2005, at approximately 2:00 p.m., Plaintiff TYLER ADAMS SCOTT was a passenger in a motor vehicle traveling west on Raintree Drive in the City of Alexander City on the west side of the Tallapoosa River.

    14.   At said time and place, Defendant JUNE C. BRAND was operating her vehicle in an easterly direction on Raintree Drive.

    15.   At said time and place, a trailer owned by Defendant DUSTIN A. FLOYD was parked in the east bound lane of Raintree Drive, blocking the lane to east bound traffic. Upon information and belief, this trailer had been parked and left in the roadway by Defendant DUSTIN A. FLOYD and/or employees of Defendant DUSTIN A. FLOYD who were acting within the line and scope of their employment.  This trailer was parked and left in the roadway for several hours during the day of December 19, 2005.

04/13/2007 11:52 AM

04/11/2007  10:14    2558257318                    DONALD R HARRISON              PAGE  06

. · 02/16/2007 11:12 FAX  2563292015        MORRIS HAYNES & HORNSBY              @ 006/008

16.   On or about December 19, 2005, at approximately 2:00 p.m., the Defendant JUNE C. BRAND failed to yield the right of way to the vehicle in which the Plaintiff was a passenger as she drove around the tractor trailer which was owned and/or operated by Defendant DUSTIN A. FLOYD and was left blocking the east bound lane of traffic on Raintree Road causing the vehicle being operated by Defendant JUNE C. BRAND to collide head on with the vehicle in which Plaintiff was a passenger and causing serious injury to the Plaintiff.

## COUNT ONE
### NEGLIGENCE AND WANTONNESS AGAINST
### JUNE C. BRAND AND DUSTIN A. FLOYD

17.   Plaintiff reavers and realleges all the allegations in the preceding paragraphs as if set out in full herein.

18.   Plaintiff avers that at the time of the accident made the basis of this suit, the Defendants JUNE C. BRAND and DUSTIN A. FLOYD were operating or locating their vehicles, in a negligent and/or wanton manner.  This negligent and/or wanton conduct was a proximate cause of the injuries sustained by the Plaintiff and renders the Defendants JUNE C. BRAND and DUSTIN A. FLOYD liable to the Plaintiff.  Plaintiff further avers that the conduct of fictitious party defendants 1-8 combined and concurred with the actions of the Defendants JUNE C. BRAND and DUSTIN A. FLOYD to cause the injuries sustained by the Plaintiff.

19.   As a proximate result of the negligence and/or wantonness of the Defendants JUNE C. BRAND, DUSTIN A. FLOYD, and fictitious party defendants 1-8, the Plaintiff was caused to sustain injuries, as follows: Plaintiff was shocked,

knocked, bruised and suffered severe soft tissue injuries, muscle strains and a broken back; Plaintiff was caused to be treated by medical physicians and will do so in the future; Plaintiff suffered great physical pain and mental anguish and will do so in the future; Plaintiff was caused to incur medical and doctor bills in an attempt to treat and cure his injuries and will do so in the future; Plaintiff was caused to lose time from work and will be unable to work in the future; Plaintiff's ability to enjoy and function in every day life free of pain has been diminished; and Plaintiff was otherwise damaged and injured.

The aforesaid negligent and/or wrongful conduct of Defendants JUNE C. BRAND, DUSTIN A. FLOYD, and/or fictitious party defendants 1-8 combined and concurred to proximately cause the injuries sustained by the Plaintiff.

WHEREFORE, the Plaintiff demands judgment against the Defendants JUNE C. BRAND, DUSTIN A. FLOYD, and/or fictitious party defendants 1-8 for damages in an amount that would be mete, just and proper under the circumstances.

Done this the 18th day of _October_, 2006.

_____
RANDALL S. HAYNES (HAY006)
Attorney for Plaintiff

OF COUNSEL:

**MORRIS, HAYNES & HORNSBY**
Randall S. Haynes
131 Main Street
Post Office Box 1660
Alexander City, Alabama 35011-1660
Telephone: 256-329-2000
Facsimile: 256-329-2015

6

04/11/2007  10:14    2568257318              DONALD R HARRISON         PAGE  08

· ' 02/16/2007 11:13 FAX  2563292015        MORRIS HAYNES & HORNSBY       @ 008/008

_Jeremy Knowles_

JEREMY KNOWLES (KNO016)
Attorney for Plaintiff

OF COUNSEL:

**MORRIS, HAYNES & HORNSBY**
Randall S. Haynes
131 Main Street
Post Office Box 1660
Alexander City, Alabama 35011-1660
Telephone: 256-329-2000
Facsimile: 256-329-2015

_Robin Reynolds_ (RR)

ROBIN REYNOLDS
Attorney for Plaintiff

OF COUNSEL:

139 S. Broadnax Street
Dadeville, Alabama 36853
Telephone: 256-825-8251
Facsimile: 256-825-8201

## JURY DEMAND

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

_Randall S. Haynes_

Of Counsel

PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL:

June C. Brand
590 Shoreline Drive
Alexander City, Alabama 35010

Dustin A. Floyd
1776 Elder Drive
Dadeville, Alabama 36853

_Randall S. Haynes_

OF COUNSEL

03/29/2007 03:00 PM



PLAINTIFF'S
EXHIBIT
B

IN THE CIRCUIT COURT OF TALLAPOOSA COUNTY
AT ALEXANDER CITY, ALABAMA

TYLER ADAM SCOTT,                          )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )      CIVIL ACTION NO.: CV-2006-214
                                           )
DUSTIN A. FLOYD, an individual;            )
JUNE C. BRAND, an individual;              )
Fictitious party defendant no. 1,          )
whether singular or plural, is that        )
certain person or persons, entity or       )
entities, who or which had                 )
responsibility for the vehicle that        )
was improperly parked in the               )
roadway which caused the injuries          )
sustained by the Plaintiff; Fictitious     )
party defendant no. 2, whether             )
singular or plural, is that certain        )
person or persons, entity or entities,     )
who or which had responsibility            )
for the trailer that was improperly        )
parked in the roadway and involved         )
in the incident made the basis of this     )
suit; Fictitious party defendant no. 3,    )
whether singular or plural, is that        )
certain person or persons, entity or       )
entities, who or which is the              )
employer of the operator and/or            )
owner of the trailer involved in the       )
incident made the basis of this suit;      )
Fictitious party defendant no. 4,          )
whether singular or plural, is that        )
certain person or persons, entity or       )
entities who or which is the               )
successor in interest to the employer      )
of the operator and/or owner of the        )
trailer involved in the incident made      )
the basis of this suit; Fictitious         )
party defendant no. 5, whether             )
singular or plural, is that certain        )

03/29/2007 03:00 PM

person or persons, entity or entities,     )
who or which is the predecessor in     )
interest to the operator and/or owner     )
of the trailer involved in the incident     )
made the basis of this suit; Fictitious     )
party defendant no. 6, whether     )
singular or plural, is that certain     )
person or persons, entity or entities,     )
who or which is the owner of the     )
vehicle which caused the injuries     )
sustained by the Plaintiff; Fictitious     )
party defendant no. 7, whether     )
singular or plural, is that certain     )
person or persons, entity or entities,     )
who or which is the owner of the     )
trailer involved in the incident made     )
the basis of this suit; Fictitious     )
party defendant no. 8, whether     )
singular or plural, is that certain     )
person or persons, entity or entities,     )
whose negligence in any way     )
caused the injuries sustained     )
by the Plaintiff. Plaintiff avers that     )
the identities of the fictitious party     )
defendants herein are otherwise     )
unknown to the Plaintiff at this time,     )
or if their names are known to     )
the Plaintiff, their identities as proper     )
party defendants are not known to     )
the Plaintiff at this time and their     )
true names will be substituted by     )
amendment when ascertained.     )
                                                        )
JUNE C. BRAND,     )
                                                        )
        Cross-Complainant,     )
                                                        )
VS.     )
                                                        )
DUSTIN FLOYD AND DUSTIN     )
FLOYD D/B/A FLOYD'S     )
PROFESSIONAL TREE SERVICE,     )
AB; CD; EF, LTD.; GH, L.L.C;     )
AND IJ, INC.,     )
                                                        )

2

03/29/2007 03:00 PM

)                              )



Cross Defendants.                    )

## CROSS-COMPLAINT

COMES NOW JUNE C. BRAND, Defendant/Cross-complainant and alleges as follows:

1.      Defendant/Cross-complainant, JUNE C. BRAND, herein referred to as **cross-complainant**, is an individual and is now, and at all times mentioned in this **cross-complaint** was, a resident of Tallapoosa County, Alabama, and over the age of nineteen (19) years.

2.      Cross-defendant DUSTIN A. FLOYD, is now, and at all times mentioned in this **cross-complaint** was, an individual and a resident of the City of Dadeville, Tallapoosa County, Alabama, and over the age of nineteen (19) years.

3.      Cross-defendant DUSTIN A. FLYOD, doing business as, FLOYD'S PROFESSIONAL TREE SERVICES, is now, and at all times mentioned in this cross-complaint was, doing business in Alexander City, Alabama.

4.      The true names and capacities, whether individual, corporate, associate, or otherwise, of the cross-defendants named in this **cross-complaint** as Fictitious Parties AB; CD; EF, LTD; GH, L.L.C; AND IJ, INC., are unknown to **cross-complainant** who sues such cross-defendants by such fictitious names. **Cross-complainant** will seek leave to amend this **cross-complaint** to show their true names and capacities when such true names and capacities have been ascertained. **Cross-complainant** is informed and believes, and on the basis of such information and belief alleges, that each of the cross-defendants designated here as a fictitious party is responsible in some manner for the happenings and events here alleged and negligently or otherwise caused the losses and/or damages as here alleged. Further, Cross Defendants, DUSTIN FLOYD AND DUSTIN FLOYD D/B/A FLOYD'S PROFESSIONAL TREE

3

)                                        )

SERVICE, AB; CD; EF, LTD.; GH, L.L.C.; AND IJ, INC., who are the entities responsible for

the vehicle and/or trailer that was improperly parked in the roadway as either owner or operator

of such or as both.

     5.     Cross-complainant is informed and believes, and on the basis of such information

and belief alleges, that at all times here mentioned, all cross-defendants, and each of them, were

the agents, servants, representatives, and employees of all other cross-defendants, and each of

them, and in doing the things here alleged, were acting within the course and scope of such

agency and employment.

     6.     On or about December 19, 2005, **cross-complainant** JUNE C. BRAND, was

driving her vehicle, traveling east on Raintree Drive, in the City of Alexander City, Alabama.

     7.     On said date, a trailer owned by cross-defendant DUSTIN A. FLOYD was parked

in the east bound lane of Raintree Drive, blocking the lane to the east bound traffic. Upon

information and belief, this trailer had been parked for several hours during the day of December

19, 2005, by the cross-defendant, DUSTIN A. FLOYD, and/or employees of all cross-defendants

who were acting within the line and scope of their employment.

     8.     On December 19, 2005, the **cross-complainant**, JUNE C. BRAND, attempted to

maneuver around the trailer that was negligently and/or wantonly parked in the east bound lane

of Raintree Drive. The negligently and/or wantonly parking of the trailer in the east bound lane

of Raintree Drive, was the proximate cause of the injuries sustained by the **cross-complainant**,

and renders all of the cross-defendants liable to the **cross-complainant**. **Cross-complainant**

further avers that the conduct of fictitious party cross defendants, DUSTIN FLOYD AND

DUSTIN FLOYD D/B/A FLOYD'S PROFESSIONAL TREE SERVICE, AB; CD; EF, LTD.;

4

03/29/2007 03:00 PM

)                                    )

GH, L.L.C.; AND IJ, INC., combined with the actions of the other cross-defendants, caused the

injuries sustained by the **cross-complainant**, JUNE C. BRAND.

## COUNT I

9.    **Cross-complainant** refers to paragraphs 1 through 8 of the **cross-complaint** and

by this reference incorporates such paragraphs as though set forth herein.

10.    As a proximate cause of the negligence of the cross-defendants, DUSTIN A.

FLOYD, individually and d/b/a Floyd's Professional Tree Services, and fictitious party cross

defendants, AB; CD; EF, LTD.; GH, L.L.C.; AND IJ, INC., the **cross-complainant, JUNE C.**

**BRAND,** was caused to sustain injuries as follows:  shocked, knocked, bruised and suffered soft

tissue injuries; **cross-complainant** was caused to be treated by a medical physician and will do

so in the future; **cross-complainant** suffered a great deal of physical pain and mental anguish

and will do so in the future; **cross-complainant** was caused to incur medical and doctor bills in

an attempt to treat and cure her injuries and will do so in the future; **cross-complainant's** ability

to enjoy every day life free from pain and mental suffering has been diminished; and **cross-**

**complainant** was otherwise damaged and injured.

WHEREFORE, the Cross-complainant, JUNE C. BRAND, demands judgment against

the cross defendants in an amount determined by an enlightened and struck jury, plus interest and

cost.

## COUNT II

11.    **Cross-complainant** refers to paragraphs 1 through 10 of the **cross-complaint** and

by this reference incorporates such paragraphs as though set forth herein.

12.    As a proximate cause of the wantonness of the cross-defendants, DUSTIN A.

FLOYD, individually and d/b/a Floyd's Professional Tree Services, and fictitious party cross

defendants, AB; CD; EF, LTD.; GH, L.L.C.; AND IJ, INC., the **cross-complainant, JUNE C.**

5

03/29/2007 03:00 PM

)                                                    )

**BRAND,** was caused to sustain injuries as follows:  shocked, knocked, bruised and suffered soft tissue injuries; **cross-complainant** was caused to be treated by a medical physician and will do so in the future; **cross-complainant** suffered a great deal of physical pain and mental anguish and will do so in the future; **cross-complainant** was caused to incur medical and doctor bills in an attempt to treat and cure her injuries and will do so in the future; **cross-complainant's** ability to enjoy every day life free from pain and mental suffering has been diminished; and **cross-complainant** was otherwise damaged and injured.

      13.      The cross-complainant, JUNE C. BRAND, demands punitive damages due to the wantonness nature of the cross defendants' actions.

      WHEREFORE, the cross-complainant demands judgment against the cross defendants for compensatory, punitive, and consequential damages as determined by an enlightened struck jury, plus cost and interest.

COUNT III

      14.      **Cross-complainant** refers to paragraphs 1 through 13 of the **cross-complaint** and by this reference incorporates such paragraphs as though set forth herein.

      15.      An actual controversy has arisen between **cross-complainant, JUNE C. BRAND,** and all cross-defendants, and each of them, with respect to the rights, obligations, and duties of the parties:  (a) **Cross-complainant** contends that she is without fault, responsibility, or blame for any of the damages that the plaintiff may have suffered.  These acts were committed by the cross-defendants and not the **cross-complainant.  Cross-complainant** contends that she is entitled to indemnity from cross-defendants, and each of them; (b) **Cross-complainant** is informed and believes, and on the basis of such information and belief alleges, that the cross-defendants, and each of them contend to the contrary.

6

)                    )

WHEREFORE, the Cross-complainant, JUNE C. BRAND, demands judgment against the cross defendants by an enlightened and struck jury, plus interest and cost.

## COUNT IV

16.    Cross-complainant refers to paragraphs 1 through 15 of this cross-complaint and by this reference incorporates such paragraphs as though set forth herein.

17.    Cross-complainant, JUNE C. BRAND, alleges that she is in no way legally responsible for the events giving rise to plaintiff's action and not legally responsible in any manner for the damages allegedly sustained by the plaintiff. If, contrary to the above allegations, cross-complainant is held to be liable for all or any part of the claim for damages asserted against cross-complainant by the plaintiff, then cross-complainant is informed and believes, and based on such information and belief alleges, that cross-defendants, and each of them, were negligent. Cross-complainant is informed and believes, and based on such information and belief alleges, that at this time the above-mentioned acts of the cross-defendants, and each of them, were the proximate cause of the damages and/or losses to the plaintiff.

18.    By reason of the facts and circumstances set forth above, cross-defendants, and each of them, are responsible and liable for any such damages in direct proportion to the extent of their actions in bringing about such damages. If cross-complainant is found to be responsible for any of the damages of the plaintiff, then cross-complainant is entitled to judgment over and against cross-defendants, and each of them, in an amount proportionate to the amount of cross-complainant's financial responsibility for such damages that exceed her portion of responsibility, if any.

WHEREFORE, the Cross-complainant, JUNE C. BRAND, demands judgment against the cross defendants in an amount determined by an enlightened and struck jury, plus interest and cost.

7

COUNT V

19. **Cross-complainant** refers to paragraphs 1 through 18 of this **cross-complaint** and by this reference incorporates such paragraphs as though set forth in full at this point.

20. **Cross-complainant, JUNE C. BRAND,** contends that she is in no way legally responsible for the damages alleged in plaintiff's complaint. However, if as a result of the matters alleged in plaintiff's complaint, **cross-complainant** is held liable for all or any part of plaintiff's alleged damages, cross-defendants, and each of them, to the extent that their fault is determined by the court, are obligated to reimburse and are liable to **cross-complainant** for all or any liability so assessed by way of contribution, and **cross-complainant** accordingly asserts here such right to contribution.

WHEREFORE, the Cross-complainant, JUNE C. BRAND, demands judgment against the cross defendants in an amount determined by an enlightened and struck jury, plus interest and cost.

DATED this the ___28___ day of ___Feb___, 2007.

Derrick Blythe (BLY003)
Attorney for Defendant/Cross-Complainant
126 Marshall Street
Alexander City, Alabama 35010
(256) 234-4101

## JURY DEMAND

The Cross Complainant demands this action be tried before a struck jury.

Derrick Blythe - BLY003
Attorney for Cross Complainant
126 Marshall Street
Alexander City, Alabama 35010
(256) 234-4101

8

PLAINTIFF'S
EXHIBIT
C

IN THE CIRCUIT COURT OF TALLAPOOSA COUNTY, ALABAMA
ALEXANDER CITY DIVISION

TINY J. COKER, as parent and                    )
next friend of LAUREN COKER,                    )
a minor,                                        )
                                                )
        Plaintiffs,                             )
                                                )
vs.                                             )      CIVIL ACTION NO: CV-07-___
                                                )
DUSTIN A. FLOYD, an individual;                 )
FLOYD'S PROFESSIONAL TREE                       )
SERVICE, a privately owned business             )
engaged in the tree service industry;           )
and JUNE C. BRAND, an individual,               )
and MATTHEW EVERS; Fictitious                   )
Party Defendant No. 1, whether singular          )
or plural, is that certain person or persons,    )
entity or entities, who or which had             )
responsibility for the vehicle that was          )
improperly parked in the roadway which           )
caused the injuries sustained by Plaintiff,      )
Lauren Coker; Fictitious Party Defendant         )
No. 2, whether singular or plural, is that       )
certain person or persons, entity or             )
entities, who or which had responsibility        )
for the trailer that was improperly parked       )
in the roadway and involved in the               )
incident made the basis of this suit;            )
Fictitious Party Defendant No. 3,                )
whether singular or plural, is that certain      )
person or persons, entity or entities, who       )
or which is the employer of the operator          )
and/or owner of the trailer involved in           )
the incident made the basis of this suit;        )
Fictitious Party Defendant No. 4, whether        )
singular or plural, is that certain person        )
or persons, entity or entities who or which      )
is the successor in interest to the employer     )
of the operator and or owner of the trailer      )
involved in the incident made the basis          )
of this suit; Fictitious Party Defendant         )
No. 5, whether singular or plural, is that       )
certain person or persons, entity or             )

entities who or which is the predecessor
in interest to the operator and or owner
of the trailer involved in the incident made
the basis of this suit; Fictitious Party
Defendant No. 6, whether singular or
plural, is that certain person or persons,
entity or entities, who or which is the
owner of the vehicle which caused the
injuries sustained by the Plaintiff;
Fictitious Party Defendant No. 7, whether
singular or plural, is that certain person
or persons, entity or entities, who or which
is the owner of the trailer involved in
the incident made the basis of this suit;
Fictitious Party Defendant No. 8, whether
singular or plural, is that certain person
or persons, entity or entities, whose
negligence in any way caused the injuries
sustained by the Plaintiff. Plaintiffs aver
that the identities of the fictitious party
defendants herein are otherwise unknown
to the Plaintiffs at this time, or if their
names are known to the Plaintiffs, their
identities as proper party defendants are
not known to the Plaintiffs at this time
and their true names will be substituted
by amendment when ascertained.

     Defendants.

---

## SUMMONS

---

TO ANY SHERIFF or any person authorized by Rule 4 (a) (3) of the Alabama Rules of Civil
Procedure to effect service in the State of Alabama:

     You are hereby commanded to serve this summons and a copy of the Complaint/Petition
in this action upon Defendant:

Dustin A. Floyd
1760 Elder Drive
Dadeville, Alabama 36853

     You are required to serve a copy of written Answer to the Complaint/Petition upon Robin

F. Reynolds. Attorney at Law, 139 South Broadnax Street, Dadeville, AL. 36853 within thirty (30) days after service of this Summons, excluding the day of the Summons, and to file the original of said written Answer with the Clerk of this Court at the time of service of the Answer upon the Attorney of Record for the Defendant (s) or within a reasonable time there-after. If any Defendant fails to do so, a Judgment by Default may be entered against the Defendant for the relief complained of in the Complaint Petition.

_____
Clerk

Dated _____

## SHERIFF'S RETURN

The above was executed by serving a copy upon the said _____

on the _____ day of _____, 2007.

_____
SHERIFF

IN THE CIRCUIT COURT OF TALLAPOOSA COUNTY, ALABAMA
ALEXANDER CITY DIVISION

TONY COKER, as parent and
next friend of LAUREN COKER,
a minor,

    Plaintiffs,

v.

DUSTIN A. FLOYD, an individual;
FLOYD'S PROFESSIONAL TREE
SERVICE, a privately owned business
engaged in the tree service industry;
and JUNE C. BRAND, an individual,
and MATTHEW EVERS; Fictitious
Party Defendant No. 1, whether singular
or plural, is that certain person or persons,
entity or entities, who or which had
responsibility for the vehicle that was
improperly parked in the roadway which
caused the injuries sustained by Plaintiff,
Lauren Coker; Fictitious Party Defendant
No. 2, whether singular or plural, is that
certain person or persons, entity or
entities, who or which had responsibility
for the trailer that was improperly parked
in the roadway and involved in the
incident made the basis of this suit;
Fictitious Party Defendant No. 3,
whether singular or plural, is that certain
person or persons, entity or entities, who
or which is the employer of the operator
and or owner of the trailer involved in
the incident made the basis of this suit;
Fictitious Party Defendant No. 4, whether
singular or plural, is that certain person
or persons, entity or entities who or which
is the successor in interest to the employer
of the operator and or owner of the trailer
involved in the incident made the basis
of this suit; Fictitious Party Defendant
No. 5, whether singular or plural, is that
certain person or entities, entity, or

CIVIL ACTION NO: CV-07-___

entities, who or which is the predecessor )
in interest to the operator and/or owner )
of the trailer involved in the incident made )
the basis of this suit. Fictitious Party )
Defendant No. 6, whether singular or )
plural, is that certain person or persons, )
entity or entities, who or which is the )
owner of the vehicle which caused the )
injuries sustained by the Plaintiff. )
Fictitious Party Defendant No. 7, whether )
singular or plural, is that certain person )
or persons, entity or entities, who or which )
is the owner of the trailer involved in )
the incident made the basis of this suit; )
Fictitious Party Defendant No. 8, whether )
singular or plural, is that certain person )
or persons, entity or entities, whose )
negligence in any way caused the injuries )
sustained by the Plaintiff.  Plaintiffs aver )
that the identities of the fictitious party )
defendants herein are otherwise unknown )
to the Plaintiffs at this time, or if their )
names are known to the Plaintiffs, their )
identities as proper party defendants are )
not known to the Plaintiffs at this time )
and their true names will be substituted )
by amendment when ascertained. )
    )
Defendants. )

## COMPLAINT

1.  Plaintiff, Tony J. Coker, suing as parent and next best friend of Lauren Coker. (Plaintiffs), is an adult resident of Tallapoosa County, Alabama.   At all times pertinent to the allegations of the Complaint, Tony J. Coker, as parent and next friend has been an adult resident citizen of that portion of Tallapoosa County, Alabama on the East side of the Tallapoosa River.

2.  The Defendant, June C. Brand, is, upon information and belief, an adult resident citizen of Tallapoosa County, Alabama.

3.  The Defendant, Dustin A. Floyd, is, upon information and belief, and adult resident citizen of Tallapoosa County, Alabama.

4.  The Defendant, Floyd's Professional Tree Service, is, upon information and belief

a privately owned business engaged in the tree service industry doing business in Tallapoosa County, Alabama.

5.   The Defendant, Matthew Evers, is, upon information and belief, an adult resident citizen of Tallapoosa County, Alabama.

6.   Fictitious party defendant no. 1, whether singular or plural, is that certain person or persons, entity or entities, who or which had responsibility for the vehicle that was improperly parked in the roadway which caused the injuries sustained by the Plaintiff, Lauren Coker.

7.   Fictitious party defendant no. 2, whether singular or plural, is that certain person or persons, entity or entities, who or which had responsibility for the trailer that was improperly parked in the roadway and involved in the incident made the basis of this suit.

8.   Fictitious party defendant no. 3, whether singular or plural, is that certain person or persons, entity or entities, who or which is the employer of the operator and/or owner of the trailer involved in the incident made the basis of this suit.

9.   Fictitious party defendant no. 4, whether singular or plural, is that certain person or persons, entity or entities who or which is the successor in interest to the employer of the operator and/or owner of the trailer involved in the incident made the basis of this suit.

10.  Fictitious party defendant no. 5, whether singular or plural, is that certain person or persons, entity or entities, who or which is the predecessor in interest to the operator and/or owner of the trailer involved in the incident made the basis of this suit.

11.  Fictitious party defendant no. 6, whether singular or plural, is that certain person or persons, entity or entities, who or which is the owner of the vehicle which cause the injuries sustained by the Plaintiff.

12.  Fictitious party defendant no. 7, whether singular or plural, is that certain person or persons, entity or entities, who or which is the owner of the trailer involved in the incident made the basis of this suit.

13.  Fictitious party defendant no. 8, whether singular or plural, is that certain person or persons, entity or entities, whose negligence in any way caused the injuries sustained by the Plaintiff.

14.  Plaintiff avers that the identities of the fictitious party defendants herein are otherwise unknown to the Plaintiff at this time, or if their names are known to the Plaintiff their identities as proper party defendants are not known to the Plaintiff at this time and their true names will be substituted by amendment when ascertained.

## STATEMENT OF FACTS

15.    On or about December 19, 2005, at approximately 2:00 p.m., Plaintiff, Lauren Coker, was a passenger in a motor vehicle traveling west on Raintree Drive in the City of Alexander City on the west side of the Tallapoosa River.

16.    At said time and place, Defendant, June C. Brand was operating her vehicle in an easterly direction on Raintree Drive.

17.    At said time and place, a trailer owned by Defendant, Dustin A. Floyd was parked in the east bound lane of Raintree Drive, blocking the lane to east bound traffic. Upon information and belief, this trailer had been parked and left in the roadway by Defendant Dustin A. Floyd, and/or employees of Defendant Dustin A. Floyd who were acting within the line and scope of their employment. This trailer was parked and left in the roadway for several hours during the day of December 19, 2005.

18.    On or about December 19, 2005, at approximately 2:00 p.m., the Defendant, June C. Brand failed to yield the right of way to the vehicle in which the Plaintiff was a passenger as she drove around the tractor trailer which was owned and/or operated by Defendant Dustin A. Floyd and was left blocking the east bound lane of traffic on Raintree Road causing the vehicle being operated by Defendant June C. Brand to collide head on with the vehicle in which Plaintiff was a passenger and causing serious injury to the Plaintiff.

## COUNT ONE
## NEGLIGENCE AND WANTONNESS AGAINST
## JUNE C. BRAND AND DUSTIN A. FLOYD

19.    Plaintiff reavers and realleges all the allegations in the preceding paragraphs as if set out in full herein.

20.    Plaintiff avers that at the time of the accident made the basis of this suit, the Defendants, June C. Brand and Dustin A. Floyd were operating or locating their vehicles, in a negligent and/or wanton manner. This negligent and/or wanton conduct was a proximate cause of the injuries sustained by the Plaintiff and renders the Defendants June C. Brand and Dustin A. Floyd liable to the Plaintiff. Plaintiff further avers that the conduct of fictitious party defendants 1-8 combined and concurred with the actions of the Defendants June C. Brand and Dustin A. Floyd to cause the injuries sustained by the Plaintiff.

21.    As a proximate result of the negligence and/or wantonness of the Defendants, June C. Brand, Dustin A. Floyd, and fictitious party defendants 1-8, the Plaintiff was caused to sustain injuries, as follows: Plaintiff was shocked, knocked, bruised and suffered severe soft tissue injuries and muscle strains; Plaintiff was caused to be

treated by medical physicians and will continue to do so in the future; Plaintiff suffered great physical pain and mental anguish and will do so in the future; Plaintiff was caused to incur medical bills in an attempt to treat and cure her injuries and will do so in the future; Plaintiff's ability to enjoy and function in every day life free of pain was never diminished; and Plaintiff was otherwise damaged and injured.

22.    The aforesaid negligent and/or wrongful conduct of Defendants June C. Brand, Glenn A. Floyd and/or fictitious party defendants 1-8 combined and concurred to proximately cause the injuries sustained by the Plaintiff.

WHEREFORE, the Plaintiff demands judgment against the Defendants June C. Brand, Glenn A. Floyd and/or fictitious party defendants 1-8 for damages in an amount that would be mete, just and proper under the circumstances.

## COUNT TWO
## NEGLIGENCE AND WANTONNESS AGAINST
## FLOYD'S PROFESSIONAL TREE SERVICE

23.    Plaintiff reavers and realleges all of the allegations in the preceding paragraphs as if set out in full herein.

24.    Plaintiff avers that at the time of the accident made the basis of this suit, Defendant Floyd's Professional Tree Service was operating or locating its vehicles in a negligent and/or wanton manner. This negligent and/or wanton conduct was a proximate cause of the injuries sustained by the Plaintiff and renders the Defendant Floyd's Professional Tree Service liable to the Plaintiff.

25.    As a proximate result of the negligence and/or wantonness of the Defendant Floyd's Professional Tree Service, the Plaintiff was caused to sustain injuries as follows: Plaintiff was shocked, knocked, bruised and suffered severe soft tissue injuries and muscle strains; Plaintiff was cause to be treated by medical physicians and will do so in the future; Plaintiff suffered great physical pain and mental anguish and will do so in the future; Plaintiff was caused to incur medical bills in an attempt to treat and cure her injuries and will do so in the future; Plaintiff's ability to enjoy and function in every day life free of pain has been diminished; and Plaintiff was otherwise damages and injured.

The aforesaid negligent and/or wrongful conduct of Defendant Floyd's Professional Tree Service proximately caused the injuries sustained by the Plaintiff.

WHEREFORE, the Plaintiff demands judgment against the Defendant Floyd's Professional Tree Service for damages in an amount that would be mete, just and proper under the circumstances.

## COUNT THREE
## NEGLIGENCE AND/OR WANTONNESS OF

## DEFENDANT MATTHEW EVERS

26.   Plaintiff reavers and realleges all of the allegations contained in the preceding paragraphs as if set out in full herein.

27.   Defendant Matthew Evers, within the line and scope of his employment with Defendant Floyd's Professional Tree Service, parked a bucket truck and/or trailer owned by Defendant Floyd's Professional Tree Service in the east bound lane of traffic on Raintree Drive, blocking the lane to east bound traffic, causing the accident made the basis of this suit and the Plaintiff's injuries.

28.   At the aforesaid time and place, Defendant Evers negligently and/or wantonly caused or allowed the bucket truck and/or trailer he was operating to block the roadway in an unsafe manner, creating a hazardous driving condition. Said negligent and/or wanton conduct was the proximate cause of Plaintiff's injuries. Defendant Evers negligently and/or wantonly failed to safely and properly park the bucket truck and/or trailer and this negligent and/or wanton conduct was the proximate cause of Plantiff's injuries.

WHEREFORE, Tony J. Coker as parent and next best friend of Lauren Coker, demands judgment against the Defendants, both jointly and severally, in an amount that would be mete, just and proper under the circumstances.

## COUNT FOUR
## NEGLIGENT AND/OR WANTON HIRING/SUPERVISION AND/OR
## ENTRUSTMENT OF DEFENDANT FLOYD'S PROFESSIONAL TREE SERVICE

29.   Plaintiff reavers and realleges all of the allegations contained in the preceding paragraphs as if set out in full herein.

30.   At the aforesaid time and place, and for some time prior thereto, Defendant Evers, while acting within the line and scope of his duty as an agent, representative or employee of Defendant Floyd's Professional Tree Service, negligently and/or wantonly caused or allowed the bucket truck and/or trailer he operated to block the roadway in an unsafe manner, creating a hazardous driving condition, and the accident made the basis of this suit. Said negligent and/or wanton conduct was a proximate cause of the Plaintiff's injuries.

31.   At the aforesaid time and place, Defendant Evers was engaged in the regular course and scope of his employment for Defendant Floyd's Professional Tree Service, and, therefore, Defendant Floyd's Professional Tree Service is liable for the negligent and or wanton acts of its agent or employee, Defendant Evers.

32.   At the aforesaid time and place, and for some time prior thereto, Defendant Floyd's Professional Tree Service was the Defendant Evers, and, as such, had the authority

to supervise the hiring and training of drivers of motor vehicles and/or trailers operated by or on behalf of said Defendant. In doing so, Defendant Floyd's Professional Tree Service negligently and/or wantonly hired and/or trained Defendant Evers even though Defendant Floyd's Professional Tree Service knew or should have known that Defendant Evers was incompetent as that term is defined in Alabama law for the position he was filling. In spite of this, Defendant Floyd's Professional Tree Service negligently and/or wantonly exercised or failed to exercise said supervisory control and said negligent and/or wanton conduct was a proximate cause of Plaintiff's injuries.

WHEREFORE, Plaintiff Tony J. Coker as parent and next best friend of Lauren Coker demands judgment against the Defendants, both jointly and severally, in an amount that would be mete, just and proper under the circumstances.

## COUNT FIVE
## NEGLIGENT HIRING OF AN INDEPENDENT CONTRACTOR

35. Plaintiff reavers and realleges all of the allegations contained in the preceding paragraphs as if set out in full herein.

36. Plaintiff has averred that Defendant Evers is an employee and/or agent of Defendant Floyd's Professional Tree Service.

37. Alternatively, if Defendant, Floyd's Professional Tree Service claims that Defendant Evers is an independent contractor, then Plaintiff avers that Defendant Floyd's Professional Tree Service was negligent by its failure to exercise reasonable care to employ a competent and careful contractor to do work, specifically utilizing a bucket truck and a trailer which involves a risk of physical harm unless it is skillfully and carefully done. Defendant Evers lacked the competence and skill to reasonably and safely operate a bucket truck and trailer.

38. Plaintiff avers that the negligent hiring of an independent contractor is recognized as a valid cause of action by Alabama law as well as the Restatement (2d) of Torts §§ 409 and 411 (1965).

39. Plaintiff further avers that the conduct of Defendant Floyd's Professional Tree Service combined and concurred with the conduct of Defendants to proximately cause the Plaintiff's injuries.

WHEREFORE, Plaintiff Tony J. Coker as parent and next best friend of Lauren Coker, demands judgment against the Defendants both jointly and severally, in an amount that would be mete, just and proper under the circumstances.

Respectfully submitted,

Robin F. Reynolds     REY023
Attorney for Plaintiffs

OF COUNSEL
ROBIN F. REYNOLDS, P.C.
159 South Broadnax Street
Dadeville, Alabama 36853
256-825-9251

PLEASE SERVE DEFENDANTS AT:

June C. Brand
590 Shoreline Drive
Alexander City, Alabama 35010

Dustin A. Floyd
1776 Elder Drive
Dadeville, Alabama 36853

Matthew Evers
3446 Horseshoe Bend Road
Dadeville, Alabama 36853

Floyd's Professional Tree Service
1776 Elder Road
Dadeville, Alabama 36853

Of Counsel

PLAINTIFF'S
EXHIBIT
D

## COMMON POLICY DECLARATIONS

# Colony Insurance Company

9201 Forest Hill Avenue, Suite 200
Richmond, VA 23235

*Underwritten By Colony Management Services, Inc.*

POLICY NUMBER
GL 3418219
RENEWAL OF
GL3218787
PDQ CODE
91F

OCT 1 4 2005

**1. NAMED INSURED and MAILING ADDRESS:**
DUSTIN FLOYD DBA FLOYDS PROFESSIONAL
TREE SERVICE
1776 ELDER RD.
DADEVILLE            AL    36853

PRODUCER:  01003
Garrison Insurance Brokers, Inc.
P. O. Box 1685
Pelham, AL 35124

**2. POLICY PERIOD:** From 09/27/2005  to 09/27/2006   12:01 A.M. Standard Time at your Mailing Address above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**3. THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS
PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| COVERAGE PARTS | PREMIUM |
|---|---|
| Commercial General Liability | $  3,960.00 |
| Commercial Property | $ NOT COVERED |
| Commercial Crime | $ NOT COVERED |
| Commercial Inland Marine | $ NOT COVERED |
| Commercial Farm and Ranch | $ NOT COVERED |
| Owners And Contractors Protective | $ NOT COVERED |
| Coverage for Certified Acts of Terrorism Rejected; Exclusion Attached. | $ NOT COVERED |
| (Per Policyholder Disclosure TRIA2002Notice-1202 attached.) | |
| **TOTAL** | $  3,960.00 |
| TAX | $    248.10 |
| FEE | $    175.00 |
| | $ |
| | $ |
| | $ |

*Jennifer B Woodman*
NOTARY PUBLIC

7-31-08
My Commission Expires

I hereby certify this to be a true and correct copy.
*Carolyn Ford*
Carolyn Ford-Data Entry Supervisor

Premium shown is payable at inception.          Total Policy Premium: $    4,383.10

**4. FORMS APPLICABLE TO ALL COVERAGE PARTS:**

See Schedule of Forms and Endorsements - U001

**5. BUSINESS DESCRIPTION:** TREE REMOVAL SERVICE

Countersigned: 10/07/05                By:
                    Date                                    Authorized Representative

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1984

DCJ6550 (07/05)                                                    Company

DUSTIN FLOYD DBA FLOYDS PROFESSIONAL
· Insured: TREE SERVI
Policy Number: GL3418219

# SCHEDULE OF FORMS AND ENDORSEMENTS

Forms and Endorsements applying to and made part of this policy at the time of issuance:

| NUMBER | TITLE |
|---|---|
| FORMS APPLICABLE - POLICY COMMON FORMS | |
| PJCG (06-05) | COMMON POLICY JACKET |
| DCJ6550 (07-05) | COMMON POLICY DECLARATIONS |
| U001 (10-04) | SCHEDULE OF FORMS AND ENDORSEMENTS |
| | |
| U002 (09-04) | MINIMUM POLICY PREMIUM |
| U094 (07-02) | SERVICE OF SUIT |
| U173 (07-02) | CANCELLATION |
| UCG2175 (09-04) | EXCL-CERT. ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM |
| IL0017 (11-98) | COMMON POLICY CONDITIONS |
| IL0021 (04-98) | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| | |
| FORMS APPLICABLE - COMMERCIAL GENERAL LIABILITY | |
| | |
| DCJ6553 (07-02) | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| U003 (07-02) | HAZARDOUS MATERIALS EXCLUSION |
| U004 (07-02) | MISCELLANEOUS EXCLUSIONS ENDORSEMENT |
| U007 (07-02) | OPEN ROOF COVERAGE LIMITATION |
| U008CP (07-02) | CONTRACTORS COVERAGE LIMITATIONS AND AUDIT |
| U015 (07-02) | DEMOLITION EXCLUSION |
| U048 (09-04) | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| U070 (07-02) | DEDUCTIBLE LIABILITY INSURANCE |
| U089 (09-04) | SUBSIDENCE EXCLUSION |
| U155 (07-02) | ABSOLUTE AUTO, AIRCRAFT AND WATERCRAFT EXCLUSION |
| U159 (07-02) | LIMITATION OF COVERAGE TO BUSINESS DESCRIPTION |
| U180 (07-02) | OVER SPRAY PROPERTY DAMAGE EXCLUSION |
| CG0001 (10-01) | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0062 (12-02) | WAR LIABILITY EXCLUSION |
| CG2134 (01-87) | EXCLUSION - DESIGNATED WORK |
| CG2139 (10-93) | CONTRACTUAL LIABILITY LIMITATION |
| CG2167 (04-02) | EXCLUSION - FUNGI OR BACTERIA |
| CG2186 (12-04) | EXCLUSION - EXTERIOR INSULATION AND FINISH SYSTEMS |

Important notice: See the actual policy forms attached for the full title, terms and conditions.

U001 (10-04)                                                              Page 1 of 1

Company



8720 Stony Point Parkway
Suite 300
Richmond, VA  23235



**IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and Secretary as duly authorized representatives of the Company.**

**Dale Pilkington, President**                    **Matt Pollak, Secretary**

Colony Insurance Company  ♦  Colony Specialty Insurance Company  ♦  Colony National Insurance Company

PJCG (06/05)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MINIMUM POLICY PREMIUM

The following additional policy Conditions supercede any other policy conditions as regards the "minimum earned premium" for this policy:

**Minimum Earned Premium**

This policy is subject to a "minimum earned premium".  "Minimum earned premium" means the premium that is calculated as follows:

1. The total policy premium as shown in the policy Declarations, plus
2. Any premium adjustment by endorsements, plus
3. Any additional premium developed by audit.

**Audits and Minimum Earned Premium**

Audits will not reduce the "minimum earned premium".  The due date for audit premiums is the date shown as the due date on the bill.

**Cancellation and Minimum Earned Premium**

1. If you cancel this policy, the return premium will be 90% of the pro rata balance of any remaining unearned premium but no less than  25   % of the "minimum earned premium".
2. If we cancel the policy for any reason, other than for non-payment of premium, the "minimum earned premium" shall not apply.  We will return to you the pro rata amount of the unearned premium.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U002-0904

Page 1 of 1

Company

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SERVICE OF SUIT

Service of process may be made upon the Company to:

Claims Manager
   Colony Insurance Company,
   Colony National Insurance Company, or
   Colony Specialty Insurance Company
8720 Stony Point Parkway, Suite 300
Richmond, Virginia 23235

Where required by statute, regulation or other regulatory directive, the Company appoints the Commissioner of Insurance, or other designee specified for that purpose, as its attorney for acceptance of service of all legal process in the state in any action or proceeding arising out of this insurance.

The Commissioner or other designee is requested to forward process to the Company as shown above, or if required in his/her particular state, to a designated resident agent for service of process.

   ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U094-0702                                         Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CANCELLATION

This endorsement modifies insurance provided under the following:

OUTPUT POLICY COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EXCESS LIABILITY POLICY
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

Paragraph **A. 2. Cancellation** of the COMMON POLICY CONDITIONS is deleted and replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

  **a.** 10 days before the effective date of cancellation if we cancel for one or more of the following reasons:

    **(1)** nonpayment of premium or failure to pay a premium when due; or

    **(2)** conviction of an insured of a crime arising out of acts increasing the hazard insured against;

    **(3)** violation of any local fire, health, safety, building or construction regulation or ordinance which increases the hazard insured against under the policy;

    **(4)** any willful or reckless act or omission by an insured increasing the hazard insured against;

    **(5)** omission or concealment of fact relating to an insurance application, rating, claim or coverage under this policy;

    **(6)** failure or refusal of an insured to:
      **(a)** provide information necessary to confirm exposure or determine the policy premium; or
      **(b)** comply with underwriting requirements;

    **(7)** a substantial change in the risk covered by the policy;

    **(8)** loss of reinsurance or substantial decrease in reinsurance;

    **(9)** the cancellation is for all insureds under such policies for a given class of insureds; or

    **(10)** any reason determined by the insurance commissioner.

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CERTIFIED ACTS OF TERRORISM AND OTHER ACTS OF TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM AND PUNITIVE DAMAGES**

"Any injury or damage" arising, directly or indirectly, out of:

**(1)** "Certified acts of terrorism" or "other acts of terrorism", including any action taken in hindering or defending against an actual or expected incident of "certified acts of terrorism" or "other acts of terrorism"; or

**(2)** Any act of terrorism:

**(a)** that involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(b)** that is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**(c)** in which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials;

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage in **(1)** or **(2)** above; including

**(3)** Damages arising, directly or indirectly, out of **(1)** or **(2)** above that are awarded as punitive damages.

**B.** Exclusion **h.** under Paragraph **2. Exclusions** of SECTION I – COVERAGE C MEDICAL PAYMENTS does not apply.

**C.** The following definitions are added to the **DEFINITIONS** Section:

For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**a.** The act resulted in aggregate losses in excess of $5 million; and

    **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act of 2002. Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**D.** In the event of an act of terrorism, a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.


    ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98     Copyright, Insurance Services Office, Inc., 1998     **Page 1 of 1**    □

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

IL 00 21 04 98                    Copyright, Insurance Services Office, Inc.,  1997                    **Page 1 of 2**    □

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1997 **IL 00 21 04 98** ☐

## COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

This Coverage Part consists of this Declarations Form, the Common Policy Conditions, the Commercial General Liability Form and the Endorsements indicated as applicable. (See "COMMON POLICY DECLARATIONS" for Items 1 and 2)

**POLICY NO.** GL 3418219

**NAMED INSURED** DUSTIN FLOYD DBA FLOYDS PROFESSIONAL
TREE SERVICE

---

### 3. LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ 1,000,000 | |
| Products Completed Operations Aggregate Limit | $ 1,000,000 | |
| Personal & Advertising Injury Limit | $ 1,000,000 | |
| Each Occurrence Limit | $ 1,000,000 | |
| Damage To Premises Rented To You Limit | $ 100,000 | Any One Premises |
| Medical Expense Limit | $ 5,000 | Any One Person |

**RETROACTIVE DATE** (CG 00 02 only) - Coverage A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown below.

Retroactive Date: NONE          (Enter Date or "None" if no Retroactive Date applies.)

Location of All Premises You Own, Rent or Occupy (Same as Item 1 unless shown below):
SAME

| CLASSIFICATION | CODE NO. | PREMIUM BASIS | RATE | ADVANCE PREMIUM PR / CO | ALL OTHER |
|---|---|---|---|---|---|
| TREE PRUNING, DUSTING & SPRAYING | 99777 | p)66,000 | 60.00 | INCLUDED | 3960 |

---

**4. FORMS / ENDORSEMENTS APPLICABLE:**
SEE SCHEDULE OF FORMS AND ENDORSEMENTS - FORM U001

| TOTAL PREMIUM FOR THIS COVERAGE PART | $ 3,960.00 |
|---|---|

**5. FORM OF BUSINESS:** [X] Individual ☐ Joint Venture ☐ Partnership ☐ Organization (Other than Partnership or Joint Venture) ☐ Corporation

Audit Period: Annual unless otherwise stated:

DCJ6553 (07-02)

Includes Copyright material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1984
Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HAZARDOUS MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f.** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, n.** and **m.** are replaced by the following:

This insurance does not apply to:

**Hazardous Materials**

**(1)** "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of  "hazardous materials".

**(3)** Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials".

**(4)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs **(1)**, **(2)**, or **(3)** above.

This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

B. **SECTION V – DEFINITIONS** is amended and the following added:

"Hazardous materials" means "pollutants", lead, asbestos, silica and materials containing them.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MISCELLANEOUS EXCLUSIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following is added:

### EXCLUSION - INTERCOMPANY PRODUCTS SUITS

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of or resulting from "your products" and included within the "products-completed operations hazard".

B. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following are added:

### USL&H, JONES ACT and MARITIME EXCLUSION

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:

**(1)** operations over navigable waters or offshore including but not limited to drilling and production platforms, pipelines, and vessels; or

**(2)** direct or indirect actions including but not limited to subrogation involving U.S. Longshore & Harbor Workers Compensation Act (USL&H), Merchant Marine Act ("Jones Act") or other maritime laws and any amendments to those laws.

### EXCLUSION - PROFESSIONAL SERVICES

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from the rendering or failure to render any "professional service" except by endorsement to this policy and then only to the extent of such endorsement.

"Professional service" means:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Engineering services, including related supervisory or inspection services;

**(4)** Medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

**(5)** Any health or therapeutic service, treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** Body piercing or tattooing services including but not limited to the insertion of pigment, collagen or any other foreign substance into or under the skin;

**(9)** Services in the practice of pharmacy;

**(10)** Law enforcement or firefighting services; and

**(11)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U004-0702

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

# OPEN ROOF COVERAGE LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

**Open Roof and Heating Equipment**

This Insurance does not apply to "property damage" arising out of or resulting from:

**(1)** an "open roof".

This exclusion does not apply if:

**(a)** such "open roof" is covered with suitable waterproof material at the time of loss; and

**(b)** such suitable waterproof material has been secured to the structure;

**(2)** heat process equipment.

This exclusion does not apply if the insured:

**(a)** maintains a 15 lb. or larger charged ABC extinguisher at the site; and

**(b)** maintains personnel at the site for 30 minutes or longer after the equipment has been shut off or left the site, and

**(c)** personally inspects the area the heat work has been performed prior to leaving the site.

B. **SECTION V – DEFINITIONS** is amended and the following added:

"Open roof" means any roof or section of a roof where the protective covering (shingles, tar, felt paper, etc.) has been removed leaving the shell of the structure exposed.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U007-0702

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTORS COVERAGE LIMITATIONS AND AUDIT

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, e.** is deleted and replaced as follows:

This insurance does not apply to:

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" or "temporary worker" of any insured arising out of and in the course of:

**(a)** Employment by any insured; or

**(b)** Performing duties related to the conduct of any insured's business; or

**(2)** A fellow "employee" or "temporary worker" of any insured arising out of and in the course of such employment when the insured is an "executive officer" of such employer; or

**(3)** The spouse, child, parent, brother or sister of that "employee" or "temporary worker" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether an insured may be liable as an employer or in any other capacity;

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury; or

**(3)** To any liability assumed under any contract or agreement.

B. **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 5. Premium Audit,** subparagraph **c.** is deleted and replaced with the following:

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request. In addition:

**(1)** You shall provide us upon our request copies of Certificates of Insurance that you shall require and have obtained from your subcontractors before any work is performed on your behalf. You shall maintain copies of these Certificates during and for up to 5 years after the term of such work.

**(2)** The Certificate must evidence coverage and Limits of Insurance equal to or greater than the coverages and Limits of Insurance provided by this policy in force for the term of the work performed for you, unless other terms and limits are shown below:

Limits of Insurance:

Coverage equal to the coverages provided by this policy, and

| | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $ 300,000 |
| Products/Completed Operations Aggregate Limit | $ 300,000 |
| Each Occurrence Limit | $ 300,000 |

U008CP-0702          Includes copyrighted material of ISO Properties, Inc.,          Page 1 of 2
                              with its permission.
                                  Company

**(3)** We will have the right to adjust the annual premium charged you and use the "total cost" of all work you subcontract as the basis for the additional premium for any subcontractor:

    **(a)** whose Certificate of Insurance shows Limits of Insurance or coverage less than that required by us or

    **(b)** for whom you do not have a Certificate.

**(4)** Any premium charged shall be paid to us by the first Named Insured within 30 days of the date of invoice.

C. **SECTION V - DEFINITIONS** is amended and the following added:

"Total cost" means the combined cost of:

    **a.** all labor; plus

    **b.** materials and equipment furnished, used or delivered for use in the execution of the work performed; and

    **c.** overhead and profit including fees and commissions.

D. **SECTION V - DEFINITIONS**, subparagraph **19.** is deleted and replaced with the following:

**19.** "Temporary worker" means any person who is:

    **a.** furnished to you to substitute for a permanent "employee";

    **b.** a short-term worker; or

    **c.** not an "employee" or "volunteer worker".

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEMOLITION EXCLUSION ENDORSEMENT

This endorsement, effective              M.              forms a part of

Policy No.:                                Issued To:

By:

It is hereby understood and agreed that this insurance does not apply:

    (1)    to **Bodily Injury** or **Property Damage** arising out of any blasting operations; or

    (2)    to **Bodily Injury** or **Property Damage** arising from the use of a "ball and chain" or similar apparatus; or

    (3)    to **Bodily Injury** or **Property Damage** arising out of the demolition of any building or structure which has an original height in excess of three stories; or

    (4)    to **Property Damage** to any abutting, adjoining, common or party wall or any building and/or property of which such common or party wall is a part.

_____
Authorized Representative

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U015  (01/95)                                                                 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **SECTION I – COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions** are amended and the following added:

This insurance does not apply to:

**Employment-Related Practices**

"Bodily injury" or "personal and advertising injury" to:

- **(1)** A person arising out of any:
  - **(a)** Refusal to employ that person;
  - **(b)** Termination of that person's employment; or
  - **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, assault, battery, discrimination or abuse including sexual abuse directed at any person; or
- **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

- **(1)** Whether the insured may be liable as an employer or in any other capacity; and
- **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U048-0904          Includes copyrighted material of ISO Properties, Inc.,          Page 1 of 1
with its permission.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Amount and Basis of Deductible | |
| --- | --- | --- |
| | PER CLAIM  or | PER OCCURRENCE |
| Bodily Injury Liability<br>OR | $ NOT APPLICABLE | $ NOT APPLICABLE |
| Property Damage Liability<br>OR | $ NOT APPLICABLE | $ NOT APPLICABLE |
| Bodily Injury Liability and/or<br>Property Damage Liability Combined | $ 500 | $ NOT APPLICABLE |

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

   **1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

     **a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

     **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage";

     **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

       **(1)** "Bodily injury";

       **(2)** "Property damage"; or

       **(3)** "Bodily injury" and "property damage" combined; or

     **d.** Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

   **2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

U070-0702       Includes copyrighted material of ISO Properties, Inc.,       Page 1 of 2
with its permission.
Company

a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

b. Under Property Damage Liability Coverage, to all damages because of "property damage";

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Bodily injury" and "property damage" combined; or

d. Under Supplementary Payments-Coverage A and B, to all amounts we pay in the defense and investigation of any claim or "suit" to which this insurance applies

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any "suits" seeking those damages; and

2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We, at our sole election and option, may either:

1. Pay any part of or all of the deductible amount to effect settlement of any claim or suit, and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us; or

2. Simultaneously upon receipt of notice of any claim or at any time thereafter, request you pay or deposit with us all or any part of the deductible amount, to be held and applied by us as herein provided.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SUBSIDENCE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

**Subsidence**

This insurance does not apply to "bodily injury" or "property damage" caused by, resulting from, attributable or contributed to, or aggravated by "subsidence".

B. **SECTION V – DEFINITIONS** is amended and the following added:

"Subsidence" means ground movement caused by soil conditions including but not limited to:

**a.** soil erosion, freezing or thawing,

**b.** improperly compacted soil or construction defects,

**c.** roots of trees or shrubs,

**d.** collapse of storm or sewer drains, or

**e.** natural occurring shrink or swell soil.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ABSOLUTE
# AUTO, AIRCRAFT AND WATERCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions**, paragraph **g.** is deleted and replaced with the following:

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of or resulting from the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

B. **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance**, paragraph **b. Excess Insurance**, subparagraph **(1)(d)** is deleted.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U155-0702

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE
# TO
# BUSINESS DESCRIPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

BUSINESS DESCRIPTION: TREE REMOVAL SERVICE

A **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

**(4)** The "bodily injury" or "property damage" is caused by or results from the business described in the Schedule.

B. **SECTION I - COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 1. Insuring Agreement, b.** is amended and the following added:

This insurance applies to "personal and advertising injury" caused by an offense in the course of the business described in the Schedule.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

U159-0702

Page 1 of 1

Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# OVER SPRAY PROPERTY DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended and the following added:

This insurance does not apply to:

**OVER SPRAY PROPERTY DAMAGE**

"Property damage" caused by the spraying of paint, foam or other material by you or any other person performing such work on your behalf.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2000

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

 © ISO Properties, Inc., 2000 

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

© ISO Properties, Inc., 2000    CG 00 01 10 01    □

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance ; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

    © ISO Properties, Inc., 2000    **CG 00 01 10 01**    □

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

© ISO Properties, Inc., 2000

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      **(1)** "Bodily injury" or "personal and advertising injury":

         **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

      **(2)** "Property damage" to property:

         **(a)** Owned, occupied or used by,

         **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

      **(1)** With respect to liability arising out of the maintenance or use of that property; and

      **(2)** Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

   **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage **C;**

b. Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage **B.**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage **A;** and

b. Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

© ISO Properties, Inc., 2000

**CG 00 01 10 01**    □

**b.** If a claim is made or "suit" is brought against any insured, you must:

  **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

  **(2)** Notify us as soon as practicable.

  You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

  **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

  **(2)** Authorize us to obtain records and other information;

  **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

  **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

  This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

  This insurance is excess over:

  **(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

    **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

    **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

  **(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

© ISO Properties, Inc., 2000

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2000  **CG 00 01 10 01**  □

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

   c. All other parts of the world if the injury or damage arises out of:

      **(1)** Goods or products made or sold by you in the territory described in **a.** above;

      **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

      **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

      **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2000

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **(1)** Power cranes, shovels, loaders, diggers or drills; or

   **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing; or

   **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000

CG 00 01 10 01   □

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc.,  2000

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

  **2. Exclusions**

    This insurance does not apply to:

    **i. War**

      "Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

      **(1)** War, including undeclared or civil war; or

      **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      **(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

  **2. Exclusions**

    This insurance does not apply to:

    **WAR**

    "Personal and advertising injury", however caused, arising, directly or indirectly, out of:

    **a.** War, including undeclared or civil war; or

    **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

 © ISO Properties, Inc., 2002

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 21 34 01 87

# EXCLUSION - DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of your work:**

WORK ON INCOME PRODUCING ORCHARDS

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

Copyright, Insurance Services Office, Inc., 1986

Company

COMMERCIAL GENERAL LIABILITY
CG 21 39 10 93

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CONTRACTUAL LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the DEFINITIONS Section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement.

CG 21 39 10 93          Copyright, Insurance Services Office, Inc.,  1992                   □

COMMERCIAL GENERAL LIABILITY
CG 21 67 04 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.,** Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc.,  2001

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

    **1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

    **2.** "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

    **1.** A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

    **2.** The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

    **3.** A reinforced or unreinforced base coat;

    **4.** A finish coat providing surface texture to which color may be added; and

    **5.** Any flashing, caulking or sealant used with the system for any purpose.

09/28/2005  11:16   2056201161          GARRISON                    Date: 9/28/05 05:01 PM Page: 3 of 3
From: Donna Gano At: Dark Insurance Agen   FaxID:  To: Kelli or BOB

07/12/2005  11:08    2056201161          GARRISON                            PAGE  02/02

### POLICYHOLDER DISCLOSURE
### NOTICE OF INSURANCE COVERAGE FOR CERTIFIED ACTS OF TERRORISM

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act.

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States: to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Coverage under your policy may be affected as follows:

You should know that coverage provided by this policy for losses caused by certified acts of terrorism is partially reimbursed by the United States under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is provided below and does not include any charges for the portion of loss covered by the federal government under the Act.

You should also know that your policy does not provide coverage for acts of terrorism that are not certified by the Secretary of the Treasury.

#### Election or Rejection of Certified Terrorism Insurance Coverage

You must elect or reject this coverage for losses arising out of certified acts of terrorism, as defined in Section 102(1) of the Act, before the effective date of this policy. Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.

☐ **Coverage election.**
I hereby elect to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act for a prospective annual premium of __$100.00__ . I understand that I will not have coverage for losses arising from any non-certified acts of terrorism.

OR

☒ **Coverage rejection.**
I hereby elect not to purchase coverage for certified acts of terrorism, as defined in Section 102(1) of the Act. I understand that I will not have coverage for any losses arising from certified or non-certified acts of terrorism.



_____
Policyholder/Applicant's Signature
Must be person authorized to sign for all insureds.

Dustin Floyd
Print Name

Floyds Professional Trac
Names Insured

9-26-05
Date

| | |
|---|---|
| Colony Insurance Company | Insurance Company |
| To Be Assigned GL3418219 | Policy Number |
| Submission Number 01003 | |
| Producer Number GARRISON INSURANCE BROKERS INC (AL) | Producer Name |
| PO BOX 1685 | Street Address |
| PELHAM, AL 35124 | City, State, Zip |

The producer shown above is the wholesale insurance broker your local insurance agent used to place your insurance coverage with us. Please discuss this disclosure with your agent before signing.

TRIA2002Notice-1202                    COLONY                         Page 1 of 1